UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. _____22-mj-02291-McAliley_____

UNITED STATES OF AMERICA

V

JESSE GALINDO

      **Defendant.**
_____/

## CRIMINAL COVER SHEET

1. Did this matter originate from a matter pending in the Central Region of the United States Attorney's Office prior to August 9, 2013 (Mag. Judge Alicia Valle)?   __ Yes   X  No

2. Did this matter originate from a matter pending in the Northern Region of the United States Attorney's Office prior to August 8, 2014 (Mag. Judge Shaniek Maynard)? __ Yes   X   No

3. Did this matter originate from a matter pending in the Central Region of the United States Attorney's Office prior to October 3, 2019 (Mag. Judge Jared Strauss)?   __ Yes   X   No

Respectfully submitted,

JUAN ANTONIO GONZALEZ
UNITED STATES ATTORNEY

BY:  *Antoinette T. Bacon*
Antoinette T. Bacon
Assistant United States Attorney
Southern District of Florida
Court ID No.: A5502864
99 Northeast 4th Street
Miami, Florida 33132-2111
Telephone: (305) 961-9000
E-mail: Antoinette.t.bacon@usdoj.gov

AO 91 (Rev. 08/09) Criminal Complaint

# UNITED STATES DISTRICT COURT
for the
Southern District of Florida

| United States of America | ) |
|---|---|
| v. | ) |
| | ) Case No. 22-mj-02291-McAliley |
| JESSE GALINDO | ) |
| | ) |
| | ) |
| *Defendant(s)* | |

## CRIMINAL COMPLAINT BY TELEPHONE OR OTHER RELIABLE ELECTRONIC MEANS

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.

On or about the date(s) of __Feburary 24, 2022__ in the county of __Miami-Dade__ in the __Southern__ District of __Florida__, the defendant(s) violated:

| Code Section | Offense Description |
|---|---|
| 21 U.S.C. § 841(a)(1) & (b)(1)(A) | Possession of a Controlled Substance with Intent to Distribute |

This criminal complaint is based on these facts:

See attached affidavit.

☑ Continued on the attached sheet.

*Complainant's signature*

Shad Aschleman, DEA Special Agent
*Printed name and title*

Attested to by the Applicant in accordance with the requirements of Fed.R.Crim.P. 4.1 by Face Time.

Date: February 25, 2022

*Judge's signature*

City and state: Miami, Florida

Hon. Chris M. McAliley, U.S. Magistrate Judge
*Printed name and title*

# **AFFIDAVIT**

I, Shad Aschleman, being duly sworn, depose and state as follows:

1. I have been a Special Agent with the United States Department of Justice, Drug Enforcement Administration (DEA) since 2004, and am currently assigned to DEA Miami Field Division, High Intensity Drug Trafficking Area (HIDTA) Task Force, Group 41. I am a criminal investigator for the United States within the meaning of Title 21, United States Code, Section 878, and therefore I am empowered to conduct investigations of, and make arrests for, the offenses enumerated in Title 21 and Title 18.

2. The information set forth in this affidavit comes from my personal involvement in this investigation, as well as from information provided to me by other law enforcement officers, witnesses, and documents. This affidavit is submitted for the limited purpose of establishing probable cause for the issuance of a criminal complaint against JESSE GALINDO for violations of the laws of the United States, that is, possession with intent to distribute one kilogram or more of a mixture and substance containing a detectable amount of heroin, in violation of Title 21, United States Code, Sections 841(a)(1) and (b)(1)(A). As such, I have not included every detail known to me regarding this investigation.

3. Each of the following conversations with a Confidential Source described herein has been recorded and that recording has been reviewed by me or another member of law enforcement who has relayed the contents to me.

4. In and around February 2022, a Confidential Source ("CS") was negotiating the purchase of kilogram quantities of fentanyl from a Mexican national for approximately $36,000 per kilogram. The Mexican national connected the CS with an associate who had a North Carolina telephone number ("Associate").

5. On February 23, 2022, the Associate informed the CS that the drug transporters were in Ft. Lauderdale, Florida, and asked if the CS was ready to receive the drugs. The CS responded affirmatively. The Associate provided the CS with the transporter's phone number.

6. Later on February 23, 2022, the CS called the transporter's phone number and spoke with a female. The CS told the female that s/he was far away and would not be able to meet until 10:00 in the morning. The CS asked the female if she would wait for the CS. The female indicated that she would wait but that "they" needed to leave soon. The CS stated that if she could not wait, the CS would come up with a different plan. The female asked if the CS would send someone with money and stated that she did not want to be here anymore. The CS asked if the female had a hotel room, and the female indicated that she did not have a hotel room or money. The CS indicated that s/he would call back in ten minutes.

7. On February 24, 2022, the CS called the same phone number, but this time, a male answered. The CS asked the male if he was ready to meet, and the male replied affirmatively. The CS said that the CS was not in Florida but would send someone to pick up the package.

8. Thereafter, Task Force Officer Rolando Rios, acting in an undercover capacity, sent a WhatsApp voice message to the same telephone number the CS had called. A male returned the call and they agreed to meet at a Denny's restaurant parking lot in North Miami. TFO Rios and a second undercover law enforcement officer arrived at Denny's and met the male, later identified as JESSIE GALINDO, standing near a Jeep with temporary Texas license plates.

9. TFO Rios asked GALINDO whether he had his gift with him, and GALINDO said that it was in the Jeep. GALINDO asked if TFO Rios had the papers, and TFO Rios responded affirmatively. TFO Rios asked whether the stuff was well packaged, and GALINDO responded that it was packaged perfectly and even had stuff to mask the odor. TFO Rios said good because that

2

stuff is dangerous. GALINDO agreed. GALINDO asked how much TFO Rios brought, and TFO Rios replied "72." At one point, GALINDO offered to open the bag to show TFO Rios the contents, but TFO Rios, believing the bags to contain fentanyl, told GALDINO not to open it, but to just bring it to his trunk. When GALINDO brought the bag to TFO Rios's vehicle, TFO Rios showed GALINDO three packages of cash. TFO Rios explained that each package had $24,000 for a total of $72,000 and handed GALINDO the money. GALINDO took the money and the two parted ways. Thereafter, GALINDO was arrested.

10. The garbage bag GALINDO delivered to TFO Rios contained packages of a substance that appeared to be heroin, each wrapped in multiple layers of packaging material, including ziplock bags, plastic bags, and gray duct tape. The suspected drugs were taken to the South East Regional Laboratory for testing. They field tested positive for heroin and weighed approximately two kilograms.

11. Following his arrest, GALINDO waived his Miranda rights and agreed to speak to law enforcement. He said that he wanted to get his son, who was in Mexico, into the United States, but he needed a certain amount of money to pay for the transport. GALINDO told his son that he did not have enough money. GALINDO claimed to have received a call later that his son had been kidnapped and he needed $20,000 to secure his release, but if GALINDO did not have the money, he could make payment by doing a job transporting illegal aliens from Texas to Miami. GALINDO claimed that when he arrived at the meeting point to pick up the illegal aliens, he received instead a bag of what GALINDO thought was money. GALINDO claimed that his son was released when GALINDO was en route to Miami. GALINDO stated that he was not aware that the package he had been delivering was full of drugs. GALINDO claimed that the entire time his wife and he had thought that the package was full of money. GALINDO claimed that on two different occasions he

3

threatened to open the package, but was told by someone named "Ulyses" that he was not allowed to open the package. GALINDO acknowledged that he traveled from Texas to Florida with his wife and three children, who were inside Denny's during the transaction.

12. Based on the foregoing, I respectfully submit that there is probable cause to believe that JESSE GALINDO possessed with intent to distribute one kilogram or more of a mixture and substance containing a detectable amount of heroin, in violation of Title 21, United States Code, Section 841(a)(1) & (b)(1)(A).

FURTHER YOUR AFFIANT SAYETH NAUGHT

Shad Aschleman, Special Agent
Drug Enforcement Administration

Attested to by the applicant in accordance with the requirements of Fed.R.Crim.P. 4.1 by Face Time this __25th__ day of February 2022.

HONORABLE CHRIS M. MCALILEY
UNITED STATES MAGISTRATE JUDGE

4