UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 22-20089-CR-MOORE

UNITED STATES OF AMERICA

vs.

JESSE GALINDO,

    Defendant.
_____/

**GOVERNMENT'S OPPOSITION TO DEFENDANT'S MOTION FOR
SENTENCE REDUCTION PURSUANT TO 18 U.S.C § 3582(c)(2)**

The United States opposes the defendant's motion for sentence reduction, pursuant to 18 U.S.C. § 3582(c)(2), in light of a retroactive amendment to the United States Sentencing Guidelines (Docs. 29 & 30).[1] This motion should be denied, because even though the defendant is eligible, the 18 U.S.C. § 3553(a) factors weigh against granting relief.

**COURSE OF PROCEEDINGS IN THE CRIMINAL CASE**

On February 24, 2022, the Defendant was arrested and charged by Complaint with possession with intent to distribute a controlled substance, in violation of 21 U.S.C. § 841 (a)(1) (Doc. 1).  On March 9, 2022, the grand jury returned a one-count Indictment charging him with possession with intent to distribute one kilogram or more of a substance containing a detectable amount of heroin, in violation of 21 U.S.C. § 841(a)(1).  (Doc. 6).  On June 13, 2022, the defendant pled guilty to the Indictment charging (Doc. 17).  On September 8, 2022, this Court sentenced Defendant to 57 months imprisonment and a three-year term of Supervised Release (Doc. 28).

---

[1] Pursuant to Local Rule 11.1(D)(4), Galindo's pro se motion  (Doc. 29) should be stricken, as he is now represented by counsel, who filed Doc. 30.

The Defendant is serving his sentence at Maxwell Air Force Base, with an anticipated release date of March 12, 2026. He has served approximately two years and has credit for good conduct time of approximately 108 days, for total time served of approximately 42% of his sentence. In the approximately two years of his incarceration, he has already incurred and has been sanctioned for two, 300-level infractions: (1) refusing to obey and order and (2) possession an unauthorized item.

## Offense Conduct

Defendant trafficked approximately two kilograms of heroin, which he believed to be fentanyl, from Texas to Florida, with three minor children in the car.

On or about February 22, 2022, Defendant and Person 1 met with Person 2 to discuss delivering drugs from Texas to Florida. Defendant and Person 1 agreed to make the delivery in return for payment. Defendant and Person 1 received two packages of drugs and drove with Person 1's three daughters from Houston to Miami.

When Defendant and Person 1 arrived in Miami, they awaited a call from the Purchase to arrange delivery. On or about February 23, 2022, the Purchaser called Defendant's phone and spoke with Person 1. The Purchaser told Person 1 that the Purchaser would not be able to meet until 10:00 in the morning. The Purchaser asked Person 1 if she would wait for the Purchaser. Person 1 indicated that she would wait but that "they" needed to leave soon. The Purchaser stated that if she could not wait, the Purchaser would come up with a different plan. Person 1 asked if the Purchaser would send someone with money and stated that she did not want to be in Florida any longer. The Purchaser asked if Person 1 had a hotel room, and Person 1 indicated that she did not have a hotel room or money.

Person 1 then called Person 3 to ask for money to cover hotel expenses while Defendant, Person 1, and Person 1's three daughters waited overnight in Miami to meet with Purchaser the following day.

On February 24, 2022, the Purchaser called the same phone number, but this time, Defendant answered. The Purchaser asked if Defendant was ready to meet, and Defendant replied affirmatively. The Purchaser said that the Purchaser was not in Florida but would send someone to pick up the package.

Thereafter, Task Force Officer Rolando Rios, acting in an undercover capacity, sent a WhatsApp voice message to the same telephone number the Purchaser had called. Defendant returned the call and they agreed to meet at a Denny's restaurant parking lot in North Miami. TFO Rios and a second undercover law enforcement officer arrived at Denny's and met Defendant, standing near a Jeep with temporary Texas license plates.

TFO Rios asked Defendant whether he had his gift with him, and Defendant said that it was in the Jeep. Defendant asked if TFO Rios had the papers, and TFO Rios responded affirmatively. TFO Rios asked whether the stuff was well packaged, and Defendant responded that it was packaged perfectly and even had stuff to mask the odor. TFO Rios said good because that stuff is dangerous. Defendant agreed. Defendant asked how much TFO Rios brought, and TFO Rios replied "72." At one point, Defendant offered to open the bag to show TFO Rios the contents, but TFO Rios, believing the bags to contain fentanyl, told GALDINO not to open it, but to just bring it to his trunk. When Defendant brought the bag to TFO Rios's vehicle, TFO Rios showed Defendant three packages of cash. TFO Rios explained that each package had $24,000 for a total of $72,000 and handed Defendant the money. Defendant took the money and the two parted ways. Thereafter, Defendant was arrested.

The garbage bag Defendant delivered to TFO Rios contained approximately two kilograms of heroin. each wrapped in multiple layers of packaging material, including ziplock bags, plastic bags, and gray duct tape.

## LEGAL STANDARD

A motion to reduce an otherwise final sentence under 18 U.S.C. § 3582(c)(2) is a limited and narrow exception to the rule that final sentences are not to be modified. *See United States v. Armstrong*, 347 F.3d 905, 909 (11th Cir. 2003). Specifically, 18 U.S.C. § 3582(c)(2), provides:

> [I]n the case of a defendant who has been sentenced to a term of imprisonment based on a sentencing range that has subsequently been lowered by the Sentencing Commission . . . the court *may* reduce the term of imprisonment, after consulting the factors set forth in section 3553(a) to the extent they are applicable, if such a reduction *is consistent with applicable policy statements issued by the Sentencing Commission*.

18 U.S.C. § 3582(c)(2) (emphasis added). Thus, under 18 U.S.C. § 3582(c)(2), a district court must undertake a two-step process. *See Dillon v. United States*, 560 U.S. 817 (2010). First, the court must determine if the defendant is eligible for relief under 18 U.S.C. § 3582(c)(2). *Id*. at 826–27. The statute authorizes relief only if a retroactive amendment to the sentencing guidelines lowers the defendant's applicable sentencing guidelines range *and* relief is consistent with applicable policy statements. *Id*. The applicable policy statement here bars a court from granting relief below the bottom of the amended guideline range. U.S.S.G. § 1B1.10(b)(2)(A).

Then, if a defendant is eligible for 18 U.S.C. § 3582(c)(2) relief, the court must determine if it will exercise its discretion to reduce that defendant's sentence after it has considered the 18 U.S.C. § 3553(a) factors[2], *id*. at 826–27, and "the nature and seriousness of the danger to any

---

[2] The 18 U.S.C. § 3553(a) factors that the court must consider in ruling on a defendant's 18 U.S.C. § 3582(c)(2) motion include: (1) the nature and circumstances of the offense and the history and characteristics of the defendant; (2) the need for the sentence imposed to accomplish certain

person or the community that may be posed by a reduction in the defendant's term of imprisonment." U.S.S.G. § 1B1.10, cmt. n. 1(B).

Under the § 1B1.10(a)(1) policy statement: "[i]n a case in which a defendant is serving a term of imprisonment, and the guideline range applicable . . . has subsequently been lowered as a result of an amendment . . . the court may reduce the defendant's term of imprisonment as provided by 18 U.S.C. § 3582(c)(2)." Notably, "if a defendant receives a sentence modification under § 3582(c)(2), subsequent reduction based on the same amendment to the Guidelines is not available—the modified sentence is no longer based on the outdated Guidelines range." *United States v. Caraballo-Martinez*, 866 F.3d 1233, 1240 (11th Cir. 2017). Courts cannot "reduce [a] defendant's term of imprisonment under 18 U.S.C. § 3582(c)(2) . . . to a term that is less than the minimum of the amended guideline range." U.S.S.G. § 1B1.10(b)(2)(A).

Last, it should be noted that although the amendment went into effect on November 1, 2023, the Sentencing Commission has determined that any order reducing a defendant's sentence cannot have an effective date prior to February 1, 2024. *See* U.S.S.G. § 1B1.10(e)(2) (effective November 1, 2023).[3] "A reduction based on the retroactive application of Part A or Part B, Subpart 1 of Amendment 821 that does not comply with the requirement that the order take effect no earlier than February 1, 2024, is not consistent with this policy statement and therefore is not authorized under 18 U.S.C. § 3582(c)(2)." U.S.S.G. § 1B1.10, cmt. n. 7 (effective November 1, 2023).

---

aims, such as to reflect the seriousness of the offense, afford adequate deterrence, protect the public, or the defendant's educational, medical, or correctional treatment needs; (3) the kinds of sentences available; (4) the applicable sentencing range under the guidelines; (5) any pertinent Sentencing Commission policy statement; (6) the need to avoid unwarranted disparities among defendants; (7) the need to provide restitution to any victim of the offense. 18 U.S.C. § 3553(a).

3     If a defendant is scheduled for release before February 1, 2024, he is not entitled to relief under the new amendment.

## LEGAL ANALYSIS

### Eligibility

Defendant seeks relief based on the zero-point offenders amendment. This provision "provide[s for] a decrease of two levels from the offense level . . . for defendants who did not receive any criminal history points . . . and whose instant offense did not involve specified aggravating factors." Application to Amendment 821 (Parts A and B, Subpart 1 Only), Amendment to the Sentencing Guidelines, https://www.ussc.gov/sites/default/files/pdf/amendment-process/reader-friendly-amendments/202308_RF-retro.pdf. Specifically, a defendant must meet all the following criteria to be eligible for relief:

(1) the defendant did not receive any criminal history points from Chapter Four, Part A;

(2) the defendant did not receive an adjustment under § 3A1.4 (Terrorism);

(3) the defendant did not use violence or credible threats of violence in connection with the offense;

(4) the offense did not result in death or serious bodily injury;

(5) the instant offense of conviction is not a sex offense;

(6) the defendant did not personally cause substantial financial hardship;

(7) the defendant did not possess, receive, purchase, transport, transfer, sell, or otherwise dispose of a firearm or other dangerous weapon (or induce another participant to do so) in connection with the offense;

(8) the instant offense of conviction is not covered by § 2H1.1 (Offenses Involving Individual Rights);

(9) the defendant did not receive an adjustment under § 3A1.1 (Hate Crime Motivation or Vulnerable Victim) or § 3A1.5 (Serious Human Rights Offense); and

    (10)    the defendant did not receive an adjustment under § 3B1.1 (Aggravating Role) and was not engaged in a continuing criminal enterprise, as defined in 21 U.S.C. § 848.

U.S.S.G. § 4C1.1.

Defendant is eligible for relief under the new "zero-point offender" amendment.

### The 18 U.S.C. § 3553(a) Factors

Although Defendant is eligible for relief, a reduction is not warranted under the § 3553(a) factors, especially the nature and circumstances of the offense, Defendant's history and characteristics, and the need to provide deterrence. First, Defendant committed a serious crime that could have resulted in a significant number of overdoses and deaths. Defendant trafficked two kilograms of what he believed was fentanyl, one of the most powerful and deadly drugs. To put that in perspective, two milligrams of fentanyl are considered a lethal dose, which results in Defendant having trafficked 20 million potentially lethal doses. Fentanyl is so powerful that merely touching it could result in a fatal overdose. Yet, Defendant took a multi-state road trip, from Texas to Florida, with three minor children in the car and drugs in the trunk, where he also stored the family's luggage. Second, while Defendant has zero criminal history points, he has a prior conviction for Improper Entry by Alien, as reflected in paragraph 27 of the Presentence Investigation Report. (Doc. 24). Unlike many true zero-point offenders, he is not without criminal history. Third, maintaining the integrity of this sentence continues to provide a deterrent to others, who might consider using children in their interstate drug trafficking to lessen enforcement suspicion or avoid detection.

## CONCLUSION

Based on the foregoing, Defendant should not be granted relief.

            Respectfully submitted,

            MARKENZY LAPOINTE
            UNITED STATES ATTORNEY

By: *s/ Antoinette T. Bacon*
   Antoinette T. Bacon
   Assistant United States Attorney
   Southern District of Florida
   Court ID No.: A5502864
   99 Northeast 4th Street
   Miami, Florida 33132-2111
   Telephone: (305) 961-9000
   E-mail: Antoinette.t.bacon@usdoj.gov

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that on March 15, 2024, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF and delivered the document by United States Mail to *pro se* defendant Jesse Galindo, Reg. No. 61701-180, Federal Prison Camp, Maxwell Air Force Base, 1001 Willow Street, Montgomery, AL 36112.

            *s/Antoinette T. Bacon*
            Antoinette T. Bacon
            Assistant United States Attorney